IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BINTA P. MAMADOU, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:20-cv-146 AJT/IDD |
| ) | |
| STANLEY KYUNGJIN CHO, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**REPORT & RECOMMENDATION**

This matter is before the Court on Plaintiffs' Motion for Default Judgment as to Damages, Attorneys' Fees, and other Litigation Costs ("Motion") [Dkt. No. 198]. Having reviewed the Motion, the accompanying memorandum in support of the Motion, and all supporting documentation therein, the undersigned Magistrate Judge recommends **GRANTING** the Motion for the reasons that follow.

**I.  Factual and Procedural Background**

On February 11, 2020, Plaintiffs filed a Complaint against Stanley Kyungjin Cho, Ellen Jung Mee Kim, Shadetree Management LLC, (collectively, the "Shadetree Defendants" or "Defendants"), Young Woo Bae, John Doe Members of Bae's Woodberry, LLC and Bae's Woodberry, LLC (collectively, the "Bae Defendants"). On May 13, 2020, Plaintiffs filed an amended complaint ("Complaint"), which remains the operative complaint in this matter. The

1

Complaint includes five counts, including Counts I and II, which allege violations of Plaintiffs' civil rights, pursuant to 42 U.S.C. § 1982 and 42 U.S.C. § 1981, respectively.

On April 10, 2020, the Court authorized discovery in this proceeding. Dkt. No. 21. The parties filed a joint discovery plan on April 29, 2020, and the Court adopted the plan and entered the Rule 16(b) scheduling order on May 1, 2020. Dkt. Nos. 27, 31. The discovery period ended August 21, 2020. Dkt. Nos. 31, 93. During the approximately four months of discovery, the Shadetree Defendants repeatedly failed to meet their discovery obligations. Due to these failures, Plaintiffs filed a motion to compel. Dkt. No. 43. On August 21, 2020, the Court granted the motion and awarded Plaintiffs $29,000 in attorneys' fees as a sanction against the Shadetree Defendants. Dkt. No. 103.

On September 21, 2020, Bae Defendants filed a motion for summary judgment. Dkt. No. 106. On November 6, 2020, the Court granted the Bae Defendants' motion for summary judgment and dismissed them from the case. Dkt. No. 125. After further noncompliance by the Shadetree Defendants, Plaintiffs filed a motion for sanctions. Dkt. No. 132. On February 5, 2021, the Court granted the motion, awarded Plaintiffs an additional $14,985 in attorneys fees, and warned Shadetree Defendants that further discovery misconduct may result in a recommendation of default judgment in favor of Plaintiffs. Dkt. Nos. 139, 143. On February 19, 2021 Plaintiffs again filed a motion for sanctions against Shadetree Defendants. Dkt. No. 144. On September 3, 2021, the Court partially granted the motion for sanctions and ordered that an adverse inference instruction will be given to the jury regarding spoliation of documents. Dkt. No. 163. On October 4, 2021, Plaintiffs filed a motion for attorneys' fees. Dkt. No. 165. The Court granted the motion on October 29, 2021 and awarded Plaintiffs $87,320 in total. Dkt. No. 176. On March 4, 2022, after Shadetree Defendants failed to pay the $87,320,

the Court held the Shadetree Defendants in civil contempt and fined them an additional $10,000. On October 29, 2021, the Court entered default judgment against the Shadetree Defendants' as to their liability on Counts 1 and 2 of the Complaint. On June 24, 2022, the Plaintiffs filed a Motion for Default Judgment as to Damages. Dkt. No. 198. The Court conducted a hearing on the motion on July 8, 2022. Dkt. No. 207. After the hearing, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. The Court allowed the parties to file supplemental briefing on the issue of damages and attorneys' fees. On July 15, 2022, Plaintiff filed their brief. Shadetree Defendants elected not to file supplemental briefing on damages.

## II. A Non-Jury Hearing is not Required

Federal Rule of Civil Procedure 55(b)(2) states that when default judgement has been entered, "the court may conduct hearings" to "determine the amount of damages." Here, as discussed more below, the undersigned finds a non-jury evidentiary hearing unnecessary because the requested damages can be calculated based on the record. *See Anderson v. Found. for Advancement*, 155 F.3d 500, 507 (4th Cir. 1998) ("We do, of course, recognize that in some circumstances a district court entering a default judgment may award damages ascertainable from the pleadings without holding a hearing."); *Mutual Fed. Savings and Loan Ass'n*, 872 F.2d 88, 91 (awarding over $8 million in damages without a hearing); *Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974) (explaining that Rule 55(b)(2) "does not itself require a jury trial on the issue of damages" after default and that there is no "constitutional right to a jury trial under these circumstances, since the Seventh Amendment right to a trial by jury does not survive a default judgment").

### **III. Plaintiff's Request for Compensatory Damages**

In a default judgment case, the plaintiff's factual allegations are accepted as true for all purposes except in determining damages. To support a claim for damages, a plaintiff must provide an appropriate basis for the Court to determine whether it is entitled to the relief sought. A default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). Furthermore, in default judgment cases in this district, "there can be no recovery over the amount pled in the complaint." *Sheet Metal Workers' Nat'l Pension Fund v. Frank Torrone & Sons, Inc.*, No. 1:04-cv-1109, 2005 WL 1432786, at *8 (E.D. Va. June 1, 2005); *see also Cumberlander v. KCL Site Servs., LLC*, No. 08-994, 2009 WL 4927144, at *9 (E.D. Va. Dec. 17, 2009). However, "[t]he exact amounts for interest, costs, and attorney's fees need not be pled specifically in the complaint." *Sheet Metal Workers' Nat'l Pension Fund*, 2005 WL 1432786, at *9.

In their Motion, Plaintiffs seek $32,966.49 in compensatory damages. Dkt. No. 198. As noted above, the Court granted Plaintiff default judgment as to liability under 42 U.S.C. §§ 1981 and 1982, which forbid racial discrimination. "An action brought under statutes forbidding racial discrimination is fundamentally for the redress of a tort." *Tillman v. Wheaton-Haven Recreation Ass'n*, 517 F.2d 1141, 1143 (4th Cir. 1975). To determine compensatory damages, the Court must place the Plaintiff in the same position she would have been in absent the Defendant's wrongful conduct. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (explaining that compensatory damages in tort "are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct"); *Cooper Indus. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001) (same).

Here, as a result of Defendants' denial of the lease assignment, Plaintiff incurred expenses

renovating the alternate location for their business. In support of their request for relief, Plaintiff relies on the Mamadou Declaration, along with related billing invoices. Based on this declaration and the accompanying exhibits, the undersigned finds that compensatory damages can be calculated based upon the record. *See Anderson v. Found. for Advancement*, 155 F.3d 500, 507 (4th Cir. 1998). Further, the undersigned finds that Defendant owes Plaintiff $32,966.49 in compensatory damages. This total includes the amounts owed for Plaintiffs' expenses renovating the alternate location, including contractors, materials, equipment, furniture, security camera installation, and electrical checks. Mamadou Decl. ¶ 9.

### IV. Plaintiffs' Request for Attorneys' Fees and Litigation Costs

The Fourth Circuit has established a three-step process for determining the reasonableness of attorney's fees. *Smith v. Loundon Cnty. Pub. Schs.*, 2017 WL 176510, at *1 (E.D. Va. Jan. 17, 2017). First, "a court must determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 243 (4th Cir. 2009). Courts are guided by the following twelve factors in determining what constitutes reasonable hours expended and a reasonable rate:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson*, 560 F.3d at 243-44. In that regard, courts "need not address all twelve factors and only need discuss in detail 'those facts that are relevant to its determination of the reasonable amount of attorney's fees to award in each particular case.'" After determining the lodestar calculation,

the Court should subtract fees for time spent on unsuccessful claims. *Id.* at 244. Lastly, the Court should award a percentage of the remaining amount depending on the extent of the Plaintiff's success. *Id.*

In this case, Plaintiff seeks $649,228.50 in attorneys' fees and $10,099.43 in litigation costs. Dkt. No. 199. This figure represents the work of founding members Warren Allen II and Ray McKenzie, as well as member Gary Rubin, who have a combined 47 years of litigation experience. Dkt. No. 199-10. Collectively, the litigation team worked a total of 961.8 hours, excluding the hours spent on tasks relating solely to the Bae Defendants, at a rate of $675.00 an hour per attorney, totaling $649,228.50 in fees. *Id.* In support of the fee request, Plaintiffs submitted an exhibit with time entries and descriptions of the work performed by the attorneys. *Id.*

Considering the twelve factors set forth in *Robinson*, the undersigned finds factor one, the time and labor expended, particularly relevant in determining what constitutes reasonable hours expended and a reasonable rate. At first glance, 961.8 billable hours appears to be excessive. However, upon closer review of Plaintiffs' billing entries, the undersigned finds many of the hours Plaintiffs' counsel billed were necessitated by the Shadetree Defendants' actions throughout the discovery process. *See* Dkt. No. 199-10. Plaintiffs filed no fewer than eleven motions or notices relating to Shadetree Defendants' discovery misconduct. The Court, at least partially, granted every motion to compel and motion for sanctions the Plaintiffs filed. Moreover, Shadetree Defendants' do not object to any of Plaintiffs' counsel's billing entries. Under these particular circumstances, the undersigned finds Plaintiffs counsel's hourly rate and overall hours expended reasonable.

The second step in the lodestar analysis requires the Court to "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Johnson v. City of Aiken*, 278 F.3d 333, 337

6

(4th Cir. 2002). Although attorney's fees should not be awarded for time spent litigating unsuccessful claims, they may be awarded for time spent on unsuccessful claims if such claims are interconnected with the successful claims. All six of Plaintiffs' claims in this action arise from a common nucleus of facts and are based on related legal theories. Thus, the undersigned finds that each of Plaintiffs' claims are substantially interrelated and declines to reduce Plaintiffs' fee request as it relates to the time expended on unsuccessful claims.

Lastly, as to the final step of the analysis, which requires the Court to award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff," the undersigned finds that Plaintiff should be awarded the full amount.

The only argument against Plaintiffs' request for attorneys' fees that Shadetree Defendants raise in their memorandum in opposition is that the attorneys' fee request of $649,228.50 is not proportional to the $32,966.49 in compensatory damages, "especially" if the "attorney's fee request includes fees incurred in preparation of the case in chief against all defendants, not just Shadetree Defendants." Dkt. No. 204.

The undersigned rejects Shadetree Defendants' argument for the following reasons. First, Plaintiffs exercised proper billing judgment by excluding the hours spent on tasks relating solely to the Bae Defendants. *See Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933 (1983). The Court granted the Bae Defendants' motion for summary judgment and dismissed them from the case. Dkt. No. 125. Exhibit J highlights each billing entry that relates solely to Bae Defendants and excludes those hours from the 961.8 hour total in the fee request.

Second, attorney's fees being disproportionate to compensatory damages does not justify a reduction in attorney's fees. *See McAfee v. Boczar*, 738 F. 3d 81, 92–95 (4th Cir. 2013) (confirming "[t]he Supreme Court has rejected the proposition that a § 1988 fee award must

7

invariably be proportionate to the amount of damages a civil rights plaintiff actually recovers") (citing *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005) (awarding $350,000 in attorneys' fees to a plaintiff who received a nominal award of $1)). Moreover, Defendants offer no specific reasons why the Court should not grant Plaintiffs' attorneys' fee request. Despite being given the opportunity, Shadetree Defendants elected not to file supplemental briefing on the issue of attorneys' fees and damages. In their opposition to Plaintiffs' attorneys' fee request, Shadetree Defendants do not specifically articulate what is unreasonable about Plaintiffs' expenditure of hours on various tasks. Without a clear showing of why 961.8 hours is unreasonable in this case, the undersigned is unpersuaded by Defendants' argument.

In addition to attorneys' fees, Plaintiffs' seek $10,099.43 in litigation costs. Dkt. No. 198. In support of their request for relief, Plaintiff relies on the Mamadou Declaration, along with Exhibit K. Mamadou Decl. ¶ 14; Dkt. No. 199-11. Based on this declaration and the accompanying exhibit, the undersigned finds that Plaintiffs should be awarded $10,099.43 in litigation costs.

## V. Recommendation

For the foregoing reasons, the undersigned recommends **GRANTING** Plaintiffs' Motion for Damages, Attorneys' Fees, and other Litigation Costs and awarding compensatory damages in the amount of $32,966.49, attorneys' fees in the amount of $649,228.50 and costs in the amount of $10,099.43, totaling $692,294.42.

## VI. Notice

By mailing copies of this Report and Recommendation, the Court notifies the parties as follows. Objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A

8

**failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

ENTERED this 28th day of March 2023.

Alexandria Virginia

/s/ Ivan D. Davis
Ivan D. Davis
United States Magistrate Judge